UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL CANTLEY, individually and behalf of all other similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>RADIANCY, INC., et al.,<br><br>            Defendants. | Case No.: 1:15-cv-01649 - LJO – JLT<br><br>ORDER LIFTING STAY<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR A CHANGE OF VENUE<br><br>(Doc. 24) |

    Plaintiff April Cantley asserts Defendants Radiancy, Inc. and Photomedex, Inc. are liable for false and misleading business practices in violation of California's Unfair Competition Law, False Advertising Law, and the Consumer Legal Remedies Act. Defendants seek a change of venue to the District of Columbia, where a matter with similar claims is currently pending. (Doc. 24) Plaintiff opposes the motion, arguing the proper district is the Eastern District of California. The Court heard the oral arguments of the parties on May 9, 2016 and, at that time, stayed the matter to allow the motion practice in the District of Columbia to settle. Because that has occurred, the stay is **LIFTED**. Also, for the reasons set forth below, Defendants' motion for a change of venue is **GRANTED**.

**I.    Background**

    Plaintiff, a resident of Kern County, alleges that she viewed a "no!no!$^{TM}$ Hair Product Line television and advertisement/infomercial and visited the no!no!$^{TM}$ Hair Product Line website." (Doc. 1-1 at 35-37, ¶¶ 5 and 14) She asserts that no!no!$^{TM}$ Hair Product Line use "Thermicon Technology,"

1

which Defendants described as "patented technology to conduct a gentle pulse of heat to the hair." (*Id.* at 40, ¶ 17) Plaintiff alleges Defendants made "representations, including, but not limited to, 'painless,' 'no hair with no pain,' 'laser-like results without the high cost,' 'smooth skin without the pain,' and 'the most effective, long term hair removal system ever created,' and that hair 'stays away for weeks with no pain' in the product name, no the product label (which was prominently featured in advertisements for the no!no!™ Hair Product Line), as well as in the product advertisements she viewed in print, television, and online advertisements on the www.my-no-no.com and other websites." (*Id.* at 39, ¶ 14)

According to Plaintiff, prior to purchasing the product, she "was exposed to print, television and online advertisements stating that she could receive a full refund of the product price, shipping and handling, and return shipping within 60 days if she was unhappy with the no!no!™ Hair product." (Doc. 1-1 at 39, ¶15) Plaintiff contends that "Defendants represented, through print, television and online advertisements, including but not limited to the www.my-no-no.com website, that the no!no!™ Hair Product Line was backed by a '60-Day Triple Guarantee!'" (*Id.* at 39-40, ¶15) She asserts Defendants' advertisement also "make conflicting representations that the no!no!™ Hair Product Line 'carries a 30-day money back guarantee,' and that "[i]f you choose to return before you've used the unit for at least 45 days then we will gladly refund your purchase price but the cost of postage to return is your responsibility." (*Id.* at ¶16, footnotes omitted)

Plaintiff alleges she "purchased the no!no!™ Hair 8800 for approximately $270.00 from the www.my-no-no.com website, from her home in Bakersfield, California." (Doc. 1-1 at 41, ¶ 21) She asserts she purchased the product "for personal use in reliance upon the 'no hair with no pain,' 'painless,' 'laser-like results without the high cost,' 'smooth skin without the pain,' 'the most effective, long-term hair removal system ever created,' and that 'hair stays away for weeks with no pain' representations." (*Id.,* ¶ 22) However, Plaintiff contends that after using the "as directed, . . . [she] experienced pain when using the no!no!™ Hair 8800, including burn marks on her skin and irritated skin, and the product did not effectively remove hair or leave her skin smooth after its use as advertised." (*Id.*, ¶ 23) Thus, Plaintiff asserts "the advertised claims upon which she had relied in purchasing the high-cost product were false." (*Id.*)

2

Plaintiff reports she "called Defendants to take advantage of the 60-Day Triple Guarantee and/or refund policy," but was told by a representative "that she was required to use the product for a minimum of 45 days before she would qualify for a refund of the purchase price." (Doc. 1-1 at 41, ¶ 25) She asserts, "Defendants fail to honor the 30-day money back guarantee contained in the no!no!™ Hair Line Product Return Policy and fail to honor their representations that consumers may choose to return the no!no!™ Hair products before using the unit for at least 45 days for a refund of the complete purchase price, less postage." (*Id.*) Rather, Plaintiff contends the "60-Day Triple Guarantee is actually a 15-day refund policy that is tolled until 45 days after the consumer receives the no!no!™ Hair product." (*Id.* at 41-42, ¶ 25)

Plaintiff asserts, "Members of the public are likely to be deceived by Defendants' misrepresentations as to the pain and efficacy associated with the use of the no!no!™ Hair Product Line." (Doc. 1-1 at 40, ¶18) In addition, she alleges the public is "likely to be deceived by Defendants' misrepresentations as to the money back guarantee, Triple Guarantee, and return policy associated with the purchase of the no!no!™ Hair Product Line." (*Id.* at ¶19) Plaintiff concludes that "[a]s a proximate result of Defendants' false and misleading claims, Plaintiff and other similarly situated consumers have suffered injury in fact and have lost money or property as a result of Defendants' false and deceptive advertising and unfair business practices." (*Id.* at 42, ¶ 26)

Accordingly, Plaintiff filed a complaint in Kern County Superior Court, on behalf of herself and all others similarly situated in the state of California. (Doc. 1-1 at) She filed an amended complaint on July 27, 2014, alleging the defendants are liable for false and misleading business practices in violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200), False Advertising Law (Cal. Bus. & Prof. Code §§17500-17536), and the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1770). She seeks to represent a class defined as follows:

> All persons who purchased a no!no!™ Hair Product, including: (1) no!no!™ Hair 8800; (2) no!no!™ Hair Classic; (3) no!no!™ Hair Plus; or (4) no!no!™ Hair Pro, in the state of California at any time during the time period beginning four years prior to the inception of this action through the conclusion of this action.

(Doc. 1-1 at 42, ¶ 28) However, "individuals who received a full refund for any or all purchases of the product" are excluded from the class. (*Id.*, ¶ 29)

3

On October 29, 2015, Defendants filed a Notice of Removal, thereby initiating the matter in this Court. (Doc. 1) Defendants filed the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) on March 11, 2016, asserting the action should be transferred to the United States District Court for the District of Columbia, where a consolidated action is currently pending with "the same Defendants, identical California consumer law claims, and nearly identical fraud-based allegations concerning the same products." (Doc. 24 at 7) Plaintiff filed her opposition to the motion on April 8, 2016 (Doc. 26), to which Defendants filed a reply on April 20, 2016 (Doc. 28).

## II.     Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court explained the § 1404(a) analysis should be an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Accordingly, courts consider several factors, including:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The party seeking a change of venue has the burden to demonstrate the transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Whether to grant a change of venue is within the discretion of the District Court. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (explaining the determination of the proper venue "involves subtle considerations and is best left to the discretion of the trial judge").

## III.    Discussion and Analysis

A consolidated action is currently pending in the District Court in the District of Columbia, with the proposed national proposed class including "All purchasers of the no!no Hair removal device in the United States during the period January 7, 2005 until the present who purchased the product

from Radiancy's toll free number, website, QVC, or the Home Shopping Network." (Doc. 24 at 11, quoting Doc. 24-1 at 177, ¶ 207) The plaintiffs in the consolidated action contend the defendants are liable for violations of California's Consumer Legal Remedies Act, the Unfair Competition Law, and False Advertising Law. (Doc. 24-1 at 58-65) Plaintiff does not deny the claims are similar, but asserts her action has one "significant difference" with the claim that "Defendants failed and refused to honor the 'money back guarantee' and that in fact and practice, the guarantee was illusory." (Doc. 26 at 6) However, reviewing the claims of the plaintiffs in the consolidated actions—which include sfalse and misleading advertisements—Plaintiff's claim could simply be represented through the addition of a sub-class. Because the actions are similar, it is appropriate to consider whether the matter now pending before the Court should be transferred pursuant to 28 U.S.C. § 1404(a).

### A.    Convenience of the parties

Evaluating the parties' convenience, the Court considers Plaintiff's choice of forum, the parties' contacts with the forum, and the contacts relating to Plaintiff's claims in the chosen forum. *Jones v. GNC Franchising*, 211 F.3d 495, 498-99 (9th Cir. 2000), *cert. denied,* 531 U.S. 928 (2000). The Ninth Circuit explained the Court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Jones*, 211 F.3d at 498. In general, a plaintiff's choice of forum is given substantial weight, because courts attach a "strong presumption in favor of [the] plaintiff's choice of forum." *Piper Aircraft v. Reyno* 454 U.S. 235, 255 (1981); *Decker Coal*, 805 F.2d at 843. However, the deference accorded to a plaintiff's choice of forum may be lessened in certain circumstances. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

In *Lou* the Ninth Circuit instructed: "In judging the weight to be accorded [the plaintiff's] choice of forum, consideration must be given to the extent of both [the plaintiff's] and the [defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action." *Id.*, 834 F.2d at 739 (citing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). A plaintiff's choice "is entitled to only minimal consideration" if the Court finds "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.*

The case was filed originally in Kern County Superior Court, which is encompassed within the Eastern District of California. (Doc. 1-1) It is undisputed that Plaintiff has established contact with

this district, and placed her order for the product online while residing in this district. On the other hand, Defendants have a greater connection to the other district, and "conduct business in D.C. as part of [their] national marketing and advertising campaigns." (Doc. 24 at 16) Nevertheless, because this is not an action where all the operative facts occurred elsewhere, or where the forum has no interest in the parties or subject matter, Plaintiff's choice of forum is entitled to more than minimal consideration, and the convenience of the parties weighs against a transfer of venue. *See Lou,* 834 F.2d at 739.

### B. Convenience of the witnesses

Convenience of the witnesses is one of the most important factors in the determination of whether to grant a change of venue. *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). A transfer of venue "may be denied when witnesses either live in the forum district or are within the 100-mile reach of the subpoena power" because individuals cannot be compelled to testify when they reside beyond the boundaries of the Court's subpoena power." *Id.* at 501 (citing Fed. R. Civ. P. 45(e); *U.S. Industries, Inc. v. Procter & Gamble Co.*, 348 F. Supp. 1265 (S.D.N.Y. 1972)). Consequently, to show inconvenience for witnesses, "the moving party should state the witnesses' identifies, locations, and content and relevance of their testimony." *Meyer Mfg. Co. Ltd. v. Telebrands Corp.*, 2012 WL 1189765 at *6 (E.D. Cal. 2012) (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002); *see also E. & J. Gallo Winery v. F. & P. S.p.A.,* 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("[a]ffidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony").

Defendants contend the convenience of the witnesses weighs in favor of a transfer, because "Defendants intend to call (or Plaintiff intends to depose) approximately ten witnesses, none of whom live or work in California, but instead work and reside in or near Orangeburg, New York, various states along the Eastern Coast of the United States, and in several foreign countries most easily accessible by flight across the Atlantic Ocean." (Doc. 24 at 13, citing Rafaeli Decl. ¶¶ 25-52) Dr. Rafaeli, the chief executive officer for Radiancy, Inc., contends "it would be a significant hardship for these witnesses to appear in duplicative depositions and courtrooms at opposite ends of the country, essentially in the same calendar year, to defend suits that are virtually identical." (*Id.*)

On the other hand, Plaintiff argues Defendants fail to "identify any non-party witnesses who reside in or near the District of Columbia, and the only witnesses with information about the claims at issue in this matter are *party* witnesses (or party employee witnesses) who can be compelled by this Court to testify." (Doc. 26 at 10)  Despite the fact that party witnesses may be compelled, Plaintiff fails to address the point made by Defendants regarding the inconvenience of testifying in two similar actions on opposite sides of the country.  Thus, the convenience of the witnesses weighs in favor of a transfer to the District of Columbia.

### C.   Interest of Justice

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted).  Evaluating the interest of justice, the Court considers the ease of access to evidence; familiarity of the forums with the applicable law; and the differences in litigation in each forum, including court congestion and time of trial.  *Burke v. USF Reddaway, Inc.*, 2013 U.S. Dist. LEXIS 3074, at *15 (E.D. Cal. Jan. 8, 2013) (citing *Jones*, 211 F.3d at 498-99).  Also, the Court may consider the existence of a pending related action in the forum to which transfer has been proposed. *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1259 (W.D. Wash. 2005).

#### a.   Ease of access to evidence

Defendants contend the only evidence located in the Eastern District is the product Plaintiff purchased.  (Doc. 24 at 18)  Instead, Defendants assert "the bulk of evidence in this case exists on the east coast, primarily at Radiancy, Inc.'s principal place of business in Orangeburg, New York."  (*Id.*)  To the extent Plaintiff alleges "a national advertising 'scheme' involving print, television, and online advertisements, including discussions among Defendants' managers and directors," Defendants maintain that the "documents, materials, communications, and television commercials, to the degree they exist and are in Defendants' possession and control, are located in Orangeburg, New York."  (*Id.* at 18-19)

Plaintiff contends Defendants fail to identify "evidence that is specifically and exclusively located in D.C."  (Doc. 26 at 11)  According to Plaintiff, "Even if some transportation of documents to

this Court is required, courts have stated that the transportation of documents generally is not regarded as a burden because of technological advances in document storage and retrieval." (*Id.* at 12, citing *Van Slyke v. Capitol One Bank*, 503 F.Supp. 2d 1353, 1362 (N.D. Cal. 2007); *Metz v. U.S. Life Ins. Co.*, 674 F.Supp. 2d 1141, 1149 (C.D. Cal. 2009) ("[T]he ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations."))

Notably, Defendants do not identify any specific evidence, though asserting that "to the extent [it] exists," it must be in New York. (*See* Doc. 24 at 18-19)  Because Defendants fail to identify any evidence, this factor does not weigh in favor of a change in venue.

### b. Pendency of a related action

The Supreme Court explained that to permit simultaneous cases involving the same issues "leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (emphasis added).  Thus, the Ninth Circuit has determined that "the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus.*, 503 F.2d at 389.  Significantly, here, there is no dispute that there is an active, ongoing, similar case in the District of Columbia.  Thus, this factor weighs in favor of a change in venue.

### c. Familiarity of the forums with applicable law

Defendants contend the familiarity of the forums with the applicable law weighs in favor of a transfer "because the D.C. court has already evaluated similar facts/allegations involving identical California laws and the same Defendants and products." (Doc. 24 at 19, emphasis omitted)  However, that shows a familiarity with the *facts* of the actions rather than the *laws* governing the claims presented.  Rather, as Plaintiff observes, "[a] California district court is more familiar with California law than district courts in other states." (Doc. 26 at 13, quoting *In re Ferrero Litigation*, 768 F.Supp. 2d 1074, 1081 (S.D. Cal. 2011)); *see also Getz v. Boeing Co.*, 547 F.Supp. 2d 1080, 1085 (N.D. Cal. 2008) (observing that a court within the state "is more familiar with California law").  Consequently, this factor does not weigh in favor of a change in venue.

///

         d.      Court congestion in each forum

The Court must consider "the administrative difficulties flowing from court congestion" when considering the interest of justice. *Decker Coal*, 805 F.2d at 843 (citing *Piper* Aircraft, 454 U.S. at 255). The judges in this Court maintain one of the busiest dockets in the nation. Nevertheless, data for the twelve-month period ending September 30, 2015, indicates the median time interval between filing to disposition for civil actions was 8.4 months in the Eastern District of California and 8.2 months in the District of Columbia. United States Courts, "Judicial Caseload Profile," available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/09/30-1 (last visited May 5, 2016). Thus, this factor weighs slightly in favor of a change in venue.

## IV.    Conclusion and Order

The Court finds that the differences between the actions are not greatly significant. Moreover, although the "interest of justice" factors weigh fairly evenly, the convenience of the witnesses and the benefit of deciding the issues wholesale in one action, determine that the matter should be transferred.

Based upon the foregoing, the Defendants have met their burden of demonstrating the transfer is appropriate under 28 U.S.C. § 1404(a). *See Commodity Futures Trading Comm'n*, 611 F.2d at 279. Accordingly, the Court **ORDERS**[1]: Defendants' motion for a change of venue (Doc. 24) is **GRANTED**.

IT IS SO ORDERED.

    Dated:   **August 6, 2016**                     **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE

---

[1] "Because an order transferring venue pursuant to 28 U.S.C. § 1404(a) does not address the merits of the case, it is a nondispositive matter that is within the province of a magistrate judge's authority under 28 U.S.C. § 636(b)(1)(A). *Corrinet v. Burke*, No. 6:11–cv–06416–TC, 2012 WL 1952658, at *6 (D.Or. Apr. 30, 2012); *Shenker v. Murasky*, No. 95 CV 4692(NG)(RML), 95 CV 4739(NG)(RML), 1996 WL 650974, at *1 (E.D.N.Y. Nov. 6, 1996) ("An order issued by a magistrate judge transferring venue under 28 U.S.C. § 1404(a) is non-dispositive." ); *Holmes v. TV–3, Inc.*, 141 F.R.D. 697, 697 (W.D.La.1991) ("Since [a motion to transfer venue] is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court.")." *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1241 (S.D. Cal. 2013)